## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

RODRIC D. COHNS                                              PLAINTIFF

V.                          CASE NO. 4:14-CV-00453 BSM/BD

GARY STEWART, et al.                                        DEFENDANTS

### RECOMMENDED DISPOSITION

**I.**    **Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief

United States District Judge Brian S. Miller.  Any party may file written objections to this

Recommendation within fourteen (14) days.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

If no objections are filed, Judge Miller can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

**II.**    **Background:**

Rodric D. Cohns, formerly an inmate at the Faulkner County Detention Center

("Detention Center"), filed this case *pro se* under 42 U.S.C. § 1983, claiming that

Defendants Gary Stewart, Patricia Winters, Lloyd Vincent, and Scott Huffman acted with

deliberate indifference to his serious medical needs.  (Docket entry #1)  The Court later

allowed Mr. Cohns to amend his complaint to add deliberate-indifference claims against

Defendants John Randall and Dawin Lasker.  (#27, #28, #29)  Defendants have now

moved for summary judgment on all of Mr. Cohns's claims against them.  (#54)

Mr. Cohns has responded to the Defendants' motion, and the Defendants have

replied.  (#60, #62)  Accordingly, the motion is now ripe for decision.

Based on the evidence presented, the Court recommends that the Defendants'

motion (#54) be GRANTED.  Mr. Cohns's claims should be DISMISSED, with

prejudice.

## III.   Discussion:

A.    Standard

Summary judgment is granted to a party when the evidence, viewed in the light

most favorable to the nonmoving party, presents no genuine dispute as to any material

fact.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  A

moving party must first present evidence that there is no genuine dispute as to any

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

If the moving party meets this burden, the nonmoving party must come forward with

evidence showing that there is a genuine dispute that must be decided at a trial.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the

nonmoving party does not submit enough proof to establish a necessary element of a

claim, the moving party is entitled to judgment on that claim.  *Celotex Corp.*, 447 U.S. at

322-23, 106 S.Ct. at 2552.

    B.    Official-Capacity Claims

    All Defendants are employees of Faulkner County, Arkansas, so Mr. Cohns's

claims against the Defendants in their official capacities are, in effect, claims against

Faulkner County.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  Local governments

are not liable under § 1983 for injuries inflicted solely by their employees or agents.

*Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).

Rather, a county is liable for the acts of its employee only when the employee is carrying

out a county policy or custom.  *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628,

632 (8th Cir. 2009).

    For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or

procedure made by the municipal official who has final authority regarding such matters."

*Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010).  To establish a custom, a

plaintiff must prove that the county engaged in a continuing pattern of unconstitutional

misconduct, not just a single unconstitutional act.  *Id.* at 902–903.

    Here, in his complaint, Mr. Cohns alleges that Defendant Winters refuses to allow

a medical examination of any inmate until the inmate completes a medical-request form.

Mr. Cohns explains that he believes that this practice is in place to allow the Detention

Center to require the inmate to remit a co-payment before the inmate can be examined or

3

treated.

Under settled law, jails are not required to provide inmates medical care irrespective of cost. *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate indifference standard does not guarantee prisoners the right to be free from cost considerations). Inmates can be required to pay for their own medical expenses, if they can afford to do so, without offending the United States Constitution.. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) ("requiring [county] inmates to pay for their own medications if they can afford to do so . . . is not a federal constitutional violation").

Here, in his response to the Defendants' motion, Mr. Cohns alleges that Defendant Stewart told other physicians that Mr. Cohns was responsible for paying for any medical services provided, but that he did not have any funds available. He claims that this was "an intentional and deliberate attempt to deter any orthopedic [doctors] from treating plaintiff." (#60 at p.4) Mr. Cohns refers to his medical records to support these allegations. His records, however, indicate that Mr. Cohns was informed that any treating physician would either require insurance or monetary payment for their services. Because Mr. Cohns informed Defendant Winters that he did not have any funds available, Defendant Winters noted that he would have to discuss the issue with Defendant Stewart.

Here, it is undisputed that Mr. Cohns ultimately was examined and treated by an orthopedic surgeon. Mr. Cohns has not provided any evidence that he was injured as a result of any delay in treatment caused by a Faulkner County custom or policy. Because

4

his unsubstantiated allegations are insufficient to create a genuine issue of material fact, his claims against Defendants in their official capacities fail as a matter of law.

C.     Deliberate-Indifference Claim

1.     Factual Background

Mr. Cohns's claims arise out of an altercation involving another inmate that occurred at the Detention Center on April 23, 2014.  Mr. Cohns alleges that he suffered a broken wrist during the incident and immediately requested medical attention.  He explains that Detention Center staff members informed him that the nurse was leaving for the day and that he would not be examined until the following day.

The following day, although Mr. Cohns continued to complain of pain, he was told to complete a medical-request form.  That evening, Corporal Saxon (not a party to this lawsuit) assisted Mr. Cohns in completing a medical request form.

On April 25, 2014, Mr. Cohns was transported to the Conway Imagining Center for an x-ray.  Mr. Cohns alleges that Officer Davis (not a party to this lawsuit) told him that his wrist was broken, but that he was transported back to the Detention Center without treatment.

Mr. Cohns alleges that he continued to request medical treatment daily, but was told that he would not be examined by a nurse and that he would have to wait until May 1, 2014, to be seen by a physician.

On May 1, 2014, Defendant Stewart examined Mr. Cohns and confirmed that his

right wrist was broken.  Mr. Cohns alleges that he asked that Defendant Stewart re-set the bones prior to administering the cast, but that Defendant Stewart denied the request.

Mr. Cohns complains that within days of his wrist being placed in the cast, the cast began to deteriorate.  When he reported the problem, he allegedly was told to submit a medical-request form.

On May 8, 2015, Defendant Stewart again examined Mr. Cohns.   Defendant Stewart allegedly informed the nurse to reinforce the cast with additional plaster, rather than re-set the cast.  As a result, Mr. Cohns alleges, the cast was so heavy that it caused significant pain and had to be removed.

On May 29, 2014, Mr. Cohns was transported to Conway Imaging Center for follow-up x-rays.  Defendant Stewart allegedly informed Mr. Cohns that his "wrist was fine."  (#1 at p.9)  At that time, Mr. Cohns requested that he be examined by an orthopedic surgeon.  According to Mr. Cohns, Defendant Stewart told Mr. Cohns that he would not be seen be seen by an orthopedist unless he could pay for it.  Defendant Stewart allegedly made the referral, but informed Mr. Cohns that he would not be scheduled for an appointment unless he had insurance.

On July 7, 2014, Mr. Cohns was examined by an orthopedist at the University of Arkansas Medical Center.  According to Mr. Cohns, the orthopedist informed him that his injury was severe and that the bone would have to be re-broken and surgery would be required to repair the damage.

6

On the date this lawsuit was filed, July 30, 2014, Mr. Cohns states that he had not received any further medical treatment.

The undisputed evidence presented in support of the Defendants' motion for summary judgment supports <u>some</u> of Mr. Cohns's allegations.  According to Mr. Cohns's medical records, on April 23, 2014, immediately following the underlying incident, Defendant Winters examined Mr. Cohns.  At that time, Defendant Winters observed a good range of motion in Mr. Cohns's wrist, provided him ibuprofen, and wrapped his wrist in "co-flex."  (#56-3 at p.3)  The following day, Corporal Saxon assisted Mr. Cohns in completing a medical-request form.  (#56-3 at p.1)  On April 25, 2014, Defendant Winters noted that Mr. Cohns had been transported to Conway Imaging for an x-ray. (#56-3 at p.2)  The x-rays revealed that Mr. Cohns's wrist was fractured.  (#56-3 at p.3) According to Mr. Cohns's medical records, Defendant Stewart was contacted and planned to examine Mr. Cohns after reviewing the x-ray report.  (#56-3 at p.4)

On May 1, 2014, Mr. Cohns was examined by Defendant Stewart and a cast was applied.  (#56-3 at pp.3-4, 11)  Mr. Cohns was scheduled for a follow-up x-ray on May 22, 2014, as well as a follow-up clinic appointment on May 29, 2014.  (#56-3 at p.5)

On May 7, 2014, Mr. Cohns complained that his cast was deteriorating, and he was scheduled to see Defendant Stewart the following day.  (#56-3 at p.5)  The next day Mr. Cohns was evaluated by Dr. Stewart, and the cast was re-enforced.  (#56-3 at pp.5, 12)

On May 14, 2014, Mr. Cohns was seen in the medical clinic after he removed his

own cast.  At that time, his arm was wrapped with rolled gauze and co-flex, and splinted. (#56-3 at p.5)  On May 23, 2014, Mr. Cohns's x-rays revealed that his healing was incomplete.  (#56-3 at p.13)

According to the medical records, Mr. Cohns was also taken to the medical clinic on May 29, 2014, but had to be escorted from the clinic due to behavior issues.  (#56-3 at pp.5-6)

On May 30, 2014, Defendant Winters spoke with Defendant Stewart.  (#56-3 at p.6)  At that time, Defendant Stewart had consulted with a colleague regarding Mr. Cohn's future treatment.  (#56-3 at p.16)  Defendant Stewart decided to continue to splint Mr. Cohns's arm.  (#56-3 at pp.6, 12)

On June 3, 2014, Defendant Winters completed a memo for Defendant Stewart to be sent to orthopedic colleagues so that Mr. Cohns could receive additional care.  (#56-3 at p.6)

On June 10, 2014, Mr. Cohns was seen in the medical clinic to have his wrist re-wrapped and braced.  (#56-3 at p.7)  Again, on June 18, 2014, Mr. Cohns was seen in the medical clinic to have his wrist re-wrapped and to speak about the orthopedic consult that he had requested.  (#56-3 at p.7)

On July 7, 2014, Mr. Cohns was transported to UAMS and evaluated by Dr. John Stephenson.  (#56-3 at p.9; #56-7 at pp.2-9)  Dr. Stephenson ordered a CT scan of Mr. Cohns's right wrist.  On July 14, 2014, Dr. Stephenson read Mr. Cohns's CT scan and

8

developed a plan for surgical intervention.  (#56-3 at pp.20-21, #56-7 at pp.10-15)  On

July 17, 2014, Dr. Stephenson performed surgery on Mr. Cohns's right wrist.  (#56-3 at

p.9, 23-24; #56-7 at pp.16-19)

In October 2014, Dr. Stephenson conducted a follow-up examination of Mr.

Cohns.  Dr. Stephenson concluded that Mr. Cohns was "doing well," did not complain of

any pain, and had returned to more of his normal activities.  (#56-3 at p.25)

2.    Analysis

Determining whether an official was deliberately indifferent to an inmate's

medical needs involves both objective and subjective analyses.  *Scott v. Benson*, 742 F.3d

335, 339–40 (8th Cir. 2014).  To prevail, Mr. Cohns first must establish that he suffered

from an objectively serious medical need.  *Id*. at 340.  Because Defendants do not argue

that Mr. Cohns suffered from a serious medical need, the Court will turn to the subjective

component of the deliberate-indifference standard.

For Defendants to be liable, Mr. Cohns must show that the Defendants "actually

knew of but deliberately disregarded [his] serious medical need."  *Id*.  This showing

requires a mental state "akin to criminal recklessness."  *Id*. (quoting *Gordon v. Frank*, 454

F.3d 858, 862 (8th Cir. 2006)).  Mr. Cohns must show "more than negligence, more even

than gross negligence."  *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir.

2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).  He must show

that the Defendants' actions were "so inappropriate as to evidence intentional

maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

Based on the undisputed evidence, no reasonable jury could find that the Defendants acted with deliberate indifference to Mr. Cohns's medical needs. Although Mr. Cohns experienced a delay in receiving medical treatment, the delay was the result of negligence, at most. Furthermore, Defendant Stewart continued to seek additional medical treatment for Mr. Cohns when it appeared that the wrist had not healed properly. Clearly, Mr. Cohns does not agree with the manner that treatment was provided, but Mr. Cohns's subjective opinion does not create a genuine dispute of material fact on this issue. The undisputed evidence reveals that Mr. Cohns's medical needs were consistently addressed by medical personnel within the Detention Center, as well as free-world physicians.

Mr. Cohns also argues that Defendants violated Detention Center policy by not immediately transporting him to the emergency room following the underlying incident. This argument still fails. The law is well-settled that a defendant's failure to follow prison policies or procedures is not conduct that rises to the level of a constitutional claim. *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006)(citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).

D.     Supervisory Liability

Defendants Randall, Lasker, Huffman, and Vincent have also moved for summary

judgment because, they contend, Mr. Cohns's claims against them are based on their supervisory positions with the Detention Center.  Defendants are correct that in a § 1983 action, a supervisor cannot be held liable for the constitutional violations of a subordinate based solely on his or her position as a supervisor.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding  that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").  Here, however, even if these Defendants were personally involved in Mr. Cohns's medical care, as discussed above, the Court has determined that Mr. Cohns's deliberate-indifference claims fail as a matter of law.  Accordingly, his claims against these Defendants also fail.

## IV.   <u>Conclusion</u>:

The Court recommends that the Defendants' motion for summary judgment (#54) be GRANTED.  Mr. Cohns's claims should be DISMISSED, with prejudice, this ___ day of May, 2015.

_____
UNITED STATES MAGISTRATE JUDGE